## MOHOLE MOANAULI *vs.* ROSINA MANAKU.

APPEAL FROM BICKERTON, J.

HEARING, DECEMBER 22, 1891. DECISION, JANUARY 11, 1892.

JUDD, C.J., McCULLY AND BICKERTON, JJ. Mr. Justice Dole,

having been of counsel in the case, did not sit.

A deed of gift to a woman, who afterwards married the grantor, was signed by the grantor and kept by him until his death, without mentioning it to the grantee. Some time after his death it was passed, with other papers, to the attorney of the grantee by D. M., the husband of one of grantor's heirs, having been found presumably among grantor's papers after his death;

Held, there was no valid delivery of the deed, and it is inoperative.

As the deed was inoperative, the Court dismissed a petition by the grantee to set aside a decree of partition of the estate, the petition being based upon the allegation that the decree was made in ignorance of the existence of the deed.

OPINION OF THE COURT, BY JUDD, C.J.

Having given this case on appeal due deliberation, we are of opinion that the judgment appealed from should be sustained, and we accordingly affirm the same and adopt it as the decision of the Court.

DECISION OF BICKERTON, J., APPEALED FROM.

The averments in the bill are as follows:

That plaintiff is the widow of J. Moanauli, who died in the year 1883; that said J. Moanauli left him surviving the oratrix, his widow, and two daughters, Rosina Manaku residing at Honolulu, defendant, then the wife of David Manaku, and Kalanikapu, the minor daughter of said oratrix, now deceased.

That at the time of the settlement of the accounts of the administrator of said J. Moanauli, to wit, on the 21st day of September, 1887, a decree of distribution was made by the Hon. A. F. Judd, Chief Justice, sitting in Probate, by which the dower of the oratrix was set apart to her, and a partition made between said Rosina and Kalanikapu. That in pursuance of said decree said parties executed a deed of partition, said Kalanikapu joining by her guardian, Cecil Brown. That said partition is inequitable and unjust, in that it was made under a mistake of fact. That dower was set apart to the oratrix out of land owned by her, though she was at that time, and long after, ignorant of the fact of the title being in her.

That at the time of said decree, and the execution of said deed, there existed a certain deed of a portion of the land named in said partition deed from J. Moanauli to the oratrix and her sister Hanaia, dated January 16, 1871. That the oratrix first became aware of the existence of said deed in the month of June, 1891. That said deed was executed before the marriage of complainant to said J. Moanauli. That said deed last named was executed by said Moanauli and delivered to said David Manaku for the oratrix and said Hanaia; that the same was in the possession of said David Manaku at the time of partition; that, as the oratrix believes, said Rosina Manaku was aware of the existence of said deed at the date of said partition, but fraudulently concealed the same at said hearing. That said David Manaku thereafter, to wit, during the latter part of the year 1887, delivered said deed, with other papers relating to the title of said land, to Cecil Brown, Esq., who has ever since had possession of the same.

That an action of ejectment is pending between the parties hereto in regard to the land named in said deed. The proceedings in said action have been stayed by an injunction issued upon a bill of equity filed by the oratrix praying for a new trial on account of said discovery of said deed.

The answer admits some of the averments in the bill and denies others, and sets up *inter alia* that the document was never executed by the said J. Moanauli and was never delivered

by him to said David Manuku or to any person for the complainant and said Hanaia or either of them, or any other person or persons, and has never been stamped or acknowledged or recorded, and there were no witnesses to any alleged execution thereof, and that there never was any consideration therefor; and further—

" That the complainant entered into possession of the lots on Richards street set off to her in said deed of partition, the same being then valued at $1500, and enjoyed the same and the use and occupation and the rents, issues and profits thereof for a considerable time, to wit, upwards of three years after the execution of said deed of partition, and afterwards by deed dated October 18, 1890, conveyed the same for a valuable consideration, to wit, the sum of $2000, to one S. C. Allen, a purchaser thereof for a valuable consideration, and without notice of said document or of anything by reason whereof said partition might be void or voidable.   That the complainant enjoyed the use and benefit of the proceeds of said lot and has never paid or tendered the same or any part thereof to the defendant, nor reimbursed nor offered to reimburse the defendant for any interest which she, the defendant, might or ought to have in the said lot or the proceeds thereof, nor abandoned any rights under the said deed of partition, but on the contrary, long before the commencement of this suit, elected to retain the said lot and still elects to retain the proceeds thereof.

" That since the execution of said deed of partition all of the land and parcels of land therein mentioned, excepting the parts therein set off to said Kalanikapu, deceased, have been conveyed by proper deeds to purchasers for value and without notice of said document, or of any thing or matter by reason whereof said partition might be void or voidable, and are now held and owned by such purchasers."

The evidence of the Chief Justice is that when he was in practice he drew this document, that it is in his own handwriting, and that the signature is the signature of J. Moanauli; he also identifies two other deeds, dated the same date as the document in question, as being drawn by him (these two deeds were acknowl-

edged and recorded ten days after they were executed); but he cannot say that either of the three documents were executed in his office, but says he handed them to Moanauli.

This case turns on the question, was there a delivery and acceptance of this document in question? The document itself, together with the evidence of Robert French and the plaintiff, would indicate that Moanauli intended or had it in his mind to convey this piece of land to the two women. Did he change his mind and simply lay his paper aside? It is strange that the other two documents, executed the same date, should have been acknowledged and recorded and this one not. There must have been a reason for it; if he had delivered it to Manaku for plaintiff and her sister, as claimed by plaintiff, he certainly would have acknowledged it. There is not one iota of evidence that there was any such delivery to Manaku, or that Moanauli ever spoke of this document to either plaintiff or her sister, or his daughter, the defendant, or her husband Manaku; on the contrary, the plaintiff says she never heard or knew of it until Mr. Brown told her he had it. The evidence shows that Moanauli lived on this land himself and afterwards leased it to Mr. Brown, and exercised all acts of ownership over it. How this document, together with other deeds of Moanauli's property, came into the possession of Manaku, we have no evidence of; he is dead and cannot speak. He was, after the alleged delivery, appointed administrator of Moanauli's estate, and although the safe was examined some time after Moanauli's death and no deeds of his lands found in it, yet it is in evidence that Manaku had the key of the safe between the time of Moanauli's death and the examination of the safe. Mr. Brown says he got this document from Manaku with other papers, but cannot remember what was said at the time. It may be quite possible that this paper may have been with the others and Manaku not know it, for if he had wished to conceal it, which certainly it was his interest to do, he only had to destroy it, and that would be the end of the matter. The evidence is that Manaku was not the agent of either plaintiff or Moanauli at any time. It is absolutely necessary that it be shown that there was a delivery

and acceptance during the lifetime of the grantor, and that the grantor parted with all legal control of the document and the land. These propositions are not sustained in any way by the evidence in this case; we are left entirely to presumptions.

In *Anderson vs. Anderson*, 24 N. E. Rep., 1036, a father executed and acknowledged two deeds to his sons, put them in a box in which the sons also kept papers, and told a third person that he had given the land to the sons, and that the deeds were in the box for them. The sons saw the deeds in the box. Held, that there was no delivery.

The plaintiff has since sold the land held by her under the partition to a purchaser having no notice of this document; if this partition deed were set aside, could the parties be placed in their original positions? It would throw into confusion the titles of innocent third parties to a great portion of the land covered by the partition. Would it be equitable? But this need not be considered further, for I cannot find from the evidence that there ever was a delivery or acceptance of this document, consequently it is not a valid deed. And the partition deed must stand. Bill dismissed.

*C. Brown* and *F. M. Hatch*, for plaintiff.

*Thurston & Frear*, for defendant.